UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Michelle Lynn Frotten

    v.                                          Civil No. 13-cv-410-JD
                                                Opinion No. 2014 DNH 194
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R

Michelle Lynn Frotten seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits and supplemental security income. In support of reversing the decision, Frotten contends that the Administrative Law Judge ("ALJ") erred in making the residual functional capacity and credibility assessments. The Acting Commissioner moves to affirm, arguing that substantial evidence supports both assessments.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010). Substantial evidence, however, "does not approach the preponderance-of-the-evidence standard normally found in civil cases." Truczinskas v. Dir., Office of Workers' Compensation Programs, 699 F. 3d 672, 677 (1st Cir. 2012).

## Factual Background

Frotten applied for social security benefits and supplemental security income on March 1, 2010, when she was forty-three years old. She alleged that she had been disabled since September 1, 2008, because of depression, diabetes, hypertension, obesity, sleep apnea, and back pain. She has a general equivalency degree and has worked part-time as a cook.

The medical record evidence shows that Frotten was diagnosed with type 2 diabetes in 2008 and that her diabetes was moderately controlled. Frotten received treatment and took medication for depression but continued to feel depressed.[1] The records show that she was diagnosed as obese, as she was five feet six inches tall and weighed more than three hundred pounds.

Dr. John Crisp did a consultative examination of Frotten for the New Hampshire Division of Disability Service in October of

---

[1] Because Frotten's claims of error pertain to her physical capacity, the background information has been focused on those reports in the record.

2010.  Dr. Crisp noted that Frotten was taking medication for hypertension, diabetes, and depression and also noted that Frotten was working twenty-five hours a week as a cook.  On examination, Dr. Crisp found no abnormalities and a normal range of motion that was restricted by obesity.  Although she complained of intermittent back pain, Dr. Crisp found that Frotten was able to walk and was able to move well, except that her size made it difficult for her to get off of the examination table.  Dr. Crisp diagnosed obesity, hypertension, low back pain with a normal x-ray, and sleep apnea due to obesity.  He noted that Frotten had complaints related to her ability to stand for prolonged periods.

   In November of 2010, Frotten told her treating physician, Dr. Kristin Vaughan, that her back was bothering her after walking and sitting.  A scan of Frotten's lumbar spine, as interpreted by the radiologist, showed degenerative changes and/or postraumatic anterior wedging of the lower thoracic vertebrae.  Frotten continued to complain of back pain at her doctor appointments and also said that she was having numbness in her legs.  Frotten said that her back was painful when standing and that her pain was helped by taking Cymbalta and by sitting.  Frotten reported to her doctors that she had a sedentary life style.  An MRI of Frotten's lumbar spine was done on July 24, 2011, which showed multilevel degenerative disc and facet disease and moderate spinal canal stenosis.

In August of 2011, Frotten was examined by Dr. Ashton Stanton of Core Physiatry because of back pain that radiated to her left leg. She said that the pain was worse when standing and was alleviated by sitting and leaning forward. Dr. Stanton noted that Frotten had a sedentary activity level. Dr. Stanton found that Frotten's range of motion for extending her legs was severely restricted and was moderately restricted for side bending. He referred Frotten for a comprehensive and medically supervised physical therapy program.

Dr. Vaughan completed a physical impairment medical source statement in February of 2012. Dr. Vaughan stated that she had seen Frotten on a monthly basis for two and a half years. She diagnosed hypertension, diabetes, obesity, depression, and hyperlipidemia. Dr. Vaughan noted that Frotten's symptoms included back and leg pain, fatigue, and numbness in the feet when walking. Dr. Vaughan also noted Frotten's psychological issues due to depression and anxiety.

With respect to physical limitations, Dr. Vaughan stated that Frotten could sit, stand, and walk for less than two hours in an eight-hour day, that she would need to elevate her legs, and that she would require three to five unscheduled breaks of three to five minutes. She also gave her opinion that Frotten could only lift less than ten pounds, could rarely climb stairs, and could never crouch or climb ladders.

At the first hearing before an ALJ, held on October 6, 2011, Frotten appeared without a representative. After the ALJ

explained the advantages of representation and medical opinion evidence to Frotten, the hearing was continued to allow Frotten time to find representation.  The hearing was reopened on February 22, 2012, and Frotten was represented by an attorney.

Frotten testified that her back pain had gotten worse because of falls so that she could not walk without crying.  She said that while working in her part-time job as a cook she was on her feet most of the day and that when she got home from work, she went to bed.  The ALJ asked Frotten if she could do a job in which she could sit for most of the day and would not have to lift more than ten pounds during part of the day.  Frotten responded that she thought she could not do that job because she would have to get up a lot to relieve numbness and tingling in her legs.

The ALJ asked the vocational expert about work available based on several hypotheticals.  In the third hypothetical, the ALJ described a person limited to sedentary work who could only occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds; could only occasionally do postural activities; and would need a sit or stand option.  The vocational expert responded that as long as standing were just "for a couple of minutes or to stretch or regroup, as long as it was not a prolonged standing situation," such a person could work as a charge account clerk and as a security guard or surveillance system monitor.

The ALJ issued his decision on April 6, 2012. The ALJ found that Frotten had severe impairments due to multilevel degenerative disc disease of the lumbar spine, lumbar stenosis, obesity, diabetes, hypertension, attention deficit disorder, panic disorder with mild agoraphobia, and depression. Despite those impairments, the ALJ found Frotten retained the capacity to do work at the sedentary exertional level with no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps or stairs; occasional postural activities; a need to alternate between sitting and standing at thirty minute intervals; and a limitation to simple and repetitive tasks. Based on the vocational expert's testimony, the ALJ found that Frotten was not disabled because she could work as a charge account clerk or as a security guard or surveillance monitor. When the Appeals Council denied Frotten's request for review, the ALJ's decision became the decision of the Acting Commissioner.

## Discussion

Frotten argues that the Acting Commissioner's decision must be reversed and the case must be remanded because the ALJ rejected Dr. Vaughan's functional capacity opinion and no opinion exists in the record to support the ALJ's residual functional capacity assessment. Frotten also contends that the ALJ erred in assessing her credibility. The Acting Commissioner moves to affirm, asserting that substantial evidence supports the ALJ's residual functional capacity and credibility assessments.

A residual functional capacity assessment determines the most a person can do in a work setting despite his limitations caused by impairments.  20 C.F.R. § 404.1545(a)(1).[2]  The Acting Commissioner's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

The ALJ explained that he gave little weight to Dr. Vaughan's residual functional capacity assessment because he found that the opinion was inconsistent with the physical requirements of Frotten's part-time work and with Dr. Vaughan's own treatment notes.  The ALJ stated that the objective findings in Frotten's medical records did not provide "strong support for [Frotten's] allegations of disabling symptoms and limitations."  He reviewed certain medical evidence, noting Dr. Stanton's report of degenerative changes in the lumbar spine and significantly decreased range of motion, and concluded that the effects were not significant because Dr. Stanton recommended only physical therapy.  With respect to diabetes, the ALJ found that the medical records showed "a predominantly stable condition" with

---

[2]The Social Security Administration promulgated regulations governing eligibility for disability insurance benefits at Part 404 and for supplemental security income at Part 416.  Because the regulations are substantially the same, the court will cite only to the disability insurance benefits regulations, Part 404. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

"little, if any, evidence of end organ damage." The ALJ noted Frotten's obesity diagnosis and that her hypertension was well controlled. The ALJ also wrote that he was impressed with Frotten's work effort and thought she would be "capable of substantial gainful activity in a work setting that fit [sic] her needs."

Based on that review of the record evidence, the ALJ found that Frotten was physically capable of sedentary work with some climbing and postural limitations and with the ability to alternate between sitting and standing at thirty minute intervals. As Frotten contends, there is no opinion in the record that supports the ALJ's residual functional capacity assessment and no opinion that contradicts Dr. Vaughan's functional capacity assessment. Instead, it appears that the ALJ's assessment is based on his own interpretation of the medical data.

An ALJ is not permitted "to ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen, 172 F.3d at 35. An ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians," Evangelista v. Sec'y of Health & Human Servs., 829 F.2d 136, 144 (1st Cir. 1987), and may make "common-sense judgments about functional capacity based on medical findings," Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990). As a lay person, however, in the absence of medical findings or opinions, an ALJ is "not qualified to interpret raw medical data in functional terms." Nguyen, 172 F.3d at 35.

Given the lack of supporting medical findings or opinions in the record and Dr. Vaughan's uncontroverted opinion to the contrary, the ALJ's interpretation of the record to support his residual functional capacity assessment strayed beyond the bounds of his competence as a lay person.  Therefore, the ALJ's residual functional capacity assessment is not supported by substantial evidence.

In addition, the ALJ's finding at step five is not supported by substantial evidence.  A vocational expert's opinion about jobs the claimant can do provides substantial evidence at step five but only if it is based on an accurate hypothetical that reflected the ALJ's residual functional capacity assessment.  Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Mello v. Colvin, 2014 WL 1215055, at *6 (D. Mass. Mar. 25, 2014).

The ALJ asked the vocational expert about jobs available to a person able to do sedentary work with the climbing and postural limitations described in his residual functional capacity assessment and an ability to alternate sitting and standing positions at thirty minute intervals.  The vocational expert testified that such a person could do the charge account clerk and the security guard or surveillance system monitor jobs if the standing option were for only "a couple of minutes or to stretch or regroup."  Prolonged standing would rule out those jobs.

The ALJ found that Frotten could work as a charge account clerk or a security guard or surveillance system monitor, based on the vocational expert's opinion without addressing that part of the vocational expert's opinion that limited standing to only

9

a couple of minutes.  The ALJ's finding is inconsistent with the vocational expert's opinion because thirty minutes of standing is longer than a couple of minutes.  Therefore, the vocational expert's opinion does not provide substantial evidence to support the ALJ's finding at step five.

Because the ALJ's residual functional capacity assessment and his finding at step five are not supported by substantial evidence, the case must be reversed and remanded.  For that reason, it is not necessary to review the ALJ's credibility assessment.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is granted.  The Acting Commissioner's motion to affirm (document no. 11) is denied.

The case is reversed and remanded for further proceedings pursuant to sentence four of § 405(g).  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 17, 2014

cc:  D. Lance Tillinghast, Esq.
     Robert J. Rabuck, Esq.